**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **LESTER J. SMITH, JR.,** | |
| *Plaintiff,* | **CIVIL ACTION NO.** |
| **v.** | **5:22-cv-00044-TES-TQL** |
| **Warden CLINTON PERRY**, *et al.*, | |
| *Defendants.* | |

**ORDER**

Pro se Plaintiff Lester J. Smith, Jr., an inmate at Macon State Prison in

Oglethorpe, Georgia, filed a civil rights Complaint [Doc. 1] under 42 U.S.C. § 1983. He

also moved to proceed in this action *in forma pauperis*. [Doc. 2]; [Doc. 7].

However, before the United States Magistrate Judge could consider the merits of

this preliminary matter, Plaintiff filed a slew of motions: an Emergency Motion to be

Administered Medical Care [Doc. 4], a Motion for Preliminary Injunction [Doc. 5], a

Motion to Compel Defendants to Complete & Return the *Informa Pauperis* Documents

[Doc. 6], a Motion for Proceedings to Go Directly Before the District Judge [Doc. 8], an

Emergency Motion to Compel Defendants to Permanently Invoke Security Threat

Group Lock-Down Status [Doc. 9], and a second Motion for Medical Care [Doc. 10].

The United States Magistrate Judge decided to address all pending matters at the time

in his Order and Recommendation ("O&R"). *See generally* [Doc. 11]. Therefore, on March 4, 2022, the United States Magistrate Judge granted Plaintiff's Motion to Proceed *In Forma Pauperis*, consequently, denied his Motion to Compel Defendants to Complete & Return *Informa Pauperis* Documents as moot, and recommended that his Motion for Proceedings to Go Directly Before the District Judge be denied. [*Id.* at pp. 2, 4–5, 7–8]. Upon review of the merits of Plaintiff's substantive claims, the Magistrate Judge found that six of his claims should proceed for further factual development and recommended that all other claims be dismissed without prejudice. [*Id.* at pp. 23–43]. The Magistrate Judge also recommended that all four motions for preliminary injunctive relief be denied. [*Id.* at pp. 43–47]. The Magistrate Judge's recommendations are all pending before the Court.

Additionally, since the Magistrate Judge issued these recommendations, Plaintiff has submitted twenty-six new filings. These filings include four sets of Objections [Doc. 32], [Doc. 33], [Doc. 37], [Doc. 40]; two Motions to Appoint Counsel [Doc. 38], [Doc. 41]; an Amended Motion for a Preliminary Injunction [Doc. 31]; a Motion for a Temporary Restraining Order [Doc. 36]; a Motion for a Protective Order [Doc. 48]; a Motion for Defendants to Cease Retaliation [Doc. 50]; a Motion for a Subpoena Duces Tecum [Doc. 49]; a Letter [Doc. 39] to the Judge; four Notices [Doc. 42], [Doc. 44], [Doc. 47], [Doc. 55] for Filing Evidence; eight Affidavits and/or Declarations [Doc. 30], [Doc. 34], [Doc. 35],

[Doc. 43], [Doc. 45], [Doc. 46], [Doc. 53], [Doc. 54]; an Amended Complaint [Doc. 51]; and a Motion to Renew all Prior Motions [Doc. 52].

As an initial matter, the extensive nature of Plaintiff's filings to date is bordering on abusive, especially since several of these filings are repetitive or otherwise procedurally improper. The Court cautions Plaintiff that throughout this case, he must follow the Federal Rules of Civil Procedure, the Local Rules, and any Court-issued orders. If Plaintiff continues to flout the Local Rules and bombard the Court with improper filings, he may be subject to sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citation omitted) (explaining that the courts have inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases").

Nevertheless, the Court will address all pending matters in this case—beginning with Plaintiff's Motion for Proceedings to Go Directly Before the District Judge. Then, the Court will address both Motions to Appoint Counsel and the Motion for a Subpoena Duces Tecum. Next, the Court considers the evidence filed and Plaintiff's objections to the O&R regarding the dismissal of his substantive claims. Then, the Court turns to Plaintiff's "Amended Complaint", before resolving all pending motions for injunctive relief.

## DISCUSSION

### A.      Motion for Proceedings to Go Directly Before the District Judge

Early in the proceeding, Plaintiff moved for this case to proceed before the

undersigned District Judge instead of being referred to the Magistrate Judge. *See* [Doc.

8]. In response, the Magistrate Judge explained to him that the referral was proper

under 28 U.S.C. § 636(b)(1) and Local Rule 72, which authorize referrals for all pretrial

matters other than dispositive motions. [Doc. 11, pp. 7–8]. The Magistrate Judge

therefore recommended that this Motion be denied. [*Id.*].

In his first set of objections, Plaintiff objects to the recommendation "on more

grounds that his motions of a pretrial nature that the magistrate is unable to hear, be

heard by the district court judge." [Doc. 32, p. 1]. In his second set of objections, Plaintiff

makes a similar argument, i.e., that his motions are of a dispositive nature, for which

the Magistrate Judge can't make a final decision; therefore, his case should go before the

undersigned District Judge. [Doc. 33, p. 1]. This is one example of how Plaintiff has

submitted repetitive filings in this case.

Regardless, Plaintiff's objections don't show that referral to the Magistrate Judge

is in any way improper. The Magistrate Judge has not entered any inappropriate

rulings on dispositive issues. Instead, he has only made recommendations on such

matters. And, the undersigned District Judge will ultimately settle all dispositive

matters. To the extent that Plaintiff asserts that his claims should go directly before the

undersigned because they are time-sensitive, the Court finds that the Magistrate Judge

has addressed Plaintiff's claims in a timely manner. If anything, Plaintiff has delayed

the resolution of his case by submitting piecemeal, frivolous and repetitive affidavits,

declarations, objections, and motions. Thus, on *de novo* review, the Court now **ADOPTS**

that portion of the O&R denying Plaintiff's Motion for Proceedings to Go Directly

Before the District Judge [Doc. 8].

### B.   <u>Motions to Appoint Counsel</u>

Plaintiff has filed two Motions to Appoint Counsel. *See* [Doc. 38]; [Doc. 41].

However, in other filings, Plaintiff again argues that he needs to have counsel

appointed for him in this case. *See, e.g.*, [Doc. 43, Smith Decl., p. 1]. Once again, this is an

example of how Plaintiff files repetitive documents that ultimately inhibit a much more

efficient resolution of his case.

In the first Motion to Appoint Counsel, Plaintiff asserts that Defendants, as well

as other unnamed individuals, have impeded his legal mail. [Doc. 38, p. 1]. Plaintiff

contends that if these impediments continue, he will not be able to timely file things in

this case. [*Id.*]. Thus, he seeks to have counsel appointed to avoid any such issues. [*Id.*].

In support, Plaintiff submits a letter that he wrote asserting that someone failed to give

him copies of his legal mail and that people are otherwise impeding his mail. [Doc. 38-

1]. However, upon review of the docket, the Court finds it difficult to accept this

assertion as true. To date, Plaintiff appears to be receiving mail from this Court as he

has responded to the Court's Orders in a timely manner. Similarly, Plaintiff's outgoing mail appears to be reaching the Court, insofar as the Court has received numerous submissions from Plaintiff.

In the second Motion to Appoint Counsel, Plaintiff asserts that he is unable to afford counsel, the issues in the case are complex and require work that he is unable to do, and he is in segregation with limited law library access. *See* [Doc. 41]. Additionally, Plaintiff contends that he "has limited knowledge of the law", "witnesses will need to be interviewed", and Defendants are likely to lie and manipulate evidence. [*Id.* at pp. 1–2]. Plaintiff attached a memorandum of law in support of this second Motion, wherein he states that his case is factually complex and may need expert witnesses, he lacks the ability to investigate because he is in segregation, there will be conflicting testimony, he has no legal training, and his case has merit. *See* [Doc. 41-2]. Plaintiff also attached a declaration with similar statements. *See* [Doc. 41-3, pp. 1–3].

"Appointment of counsel in a civil case is not a constitutional right." *Wahl v McIver*, 773 F.2d 1169, 1174 (11th Cir. 1986). Instead, appointment of counsel is a privilege that is justified only by exceptional circumstances. *Id*. In deciding whether legal counsel should be provided, the Court considers, among other factors, the merits

of Plaintiff's claim and the complexity of the issues presented. *Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989).[1]

In accordance with *Holt*, and upon a review of the record in this case, the Court finds that Plaintiff has set forth the essential factual allegations underlying his claims, and that the applicable legal doctrines are readily apparent. As such, Plaintiff's Motions for Appointment of Counsel [Doc. 38]; [Doc. 41] are **DENIED**. Should it later become apparent that legal assistance is required to avoid prejudice to Plaintiff's rights, the Court, **on its own motion**, will consider assisting him in securing legal counsel at that time. Consequently, there is no need for Plaintiff to file additional requests for counsel.

### C.        Motion for Subpoena Duces Tecum

Plaintiff has also moved for a subpoena form pursuant to Fed. R. Civ. P. 45(a)(3), because it is relevant to the claims that the Magistrate Judge allowed to proceed for further factual development. *See generally* [Doc. 49]. Plaintiff apparently seeks information relating to his assigned housing units and certain surveillance footage, as well as the names of any personnel who were involved in transferring him to a different building, video footage from a particular day, and grievances he filed relating to an attack he previously suffered. [*Id.* at pp. 1–2].

---

[1] The federal *in forma pauperis* statute authorizes courts to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The statute does not, however, provide any funding to pay attorneys for their representation or authorize courts to compel attorneys to represent an indigent party in a civil case. *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296 (1989).

As noted in the Magistrate Judge's O&R, discovery doesn't begin until the defendants (from whom discovery is sought) either file an answer or dispositive motion. *See* [Doc. 11, p. 49]. Moreover, once discovery begins, Plaintiff is responsible for making discovery requests directly upon the defendants from whom he is seeking discovery materials. *See* [*id.* at p. 50 (providing that "[n]o party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party")]. Thus, *to the extent* that Plaintiff asks the Court to subpoena specific evidence, his Motion is **DENIED**.

In the alternative, pursuant to Fed. R. Civ. P. 45(a)(3), "[t]he clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it." To the extent that Plaintiff asks for blank subpoena forms, his Motion is **GRANTED**. To this point, Plaintiff doesn't identify how many forms he needs, but he seeks several different pieces of evidence. Some of this evidence may be available to Plaintiff through discovery without a subpoena. Regardless, out of an abundance of caution, the **CLERK** is **DIRECTED** to provide Plaintiff with five signed, but otherwise blank, subpoena forms. The Court advises Plaintiff that any subpoenas served in this case must comply with Fed. R. Civ. P. 45, along with any other applicable rules in the Federal Rules of Civil Procedure. Further, Plaintiff is reminded that just because the Court has found him to be indigent so that he may proceed without immediately paying his filing fee,

his indigent status does not waive the costs of his case such as witness fees required to accompany subpoenas. He must still pay those costs.

### D.   Evidence

Next, the Court considers Plaintiff's Letter, his four Notices of Filing Evidence, and eight Affidavits and/or Declarations under a singular analysis. It appears that Plaintiff intended for these filings to be considered evidence in support of his § 1983 claims. Federal Rule of Civil Procedure 7(a) governs the pleadings allowed in a case, which include, among other things, the complaint, the answer, and if ordered, the reply. Rule 7(b) sets forth the requirements for motions and other filings seeking court orders for relief. Fed. R. Civ. P. 7(b). None of Plaintiff's 13 filings described above constitute pleadings, motions, or filings seeking a court order for relief. And while Rule 7 expressly contemplates the submission of "other paper," nothing in the Federal Rules of Civil Procedure otherwise contemplates a party filing multiple pieces of evidence directly on the docket in a civil action. Moreover, the Magistrate Judge instructed Plaintiff in the O&R that "[d]iscovery materials shall <u>not</u> be filed with the Clerk of Court." [Doc. 11, p. 50].

Plaintiff has filed twelve such pieces of supposed "evidence" within a month and a half. Because these submissions spread the evidence and factual allegations across so many documents, they are preventing the Court from fully and accurately reviewing Plaintiff's claims.

Indeed, Plaintiff's Complaint is currently in the preliminary review stage. The Court's duty at this stage is to review the allegations of the pleading to determine whether Plaintiff's Complaint is frivolous or malicious or fails to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). The Court makes this determination based on the pleadings, and Plaintiff does not need to file things he believes to be evidence to satisfy this standard because the Court presumes that his well-pled allegations are true. *See Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004) (explaining that, when performing the preliminary review, the court must accept all factual allegations in the complaint as true). Evidence in support of his claims may be properly presented either in support of or opposition to a dispositive motion, such as a motion for summary judgment, or at trial. *See, e.g.*, Fed. R. Civ. P. 56 (regarding summary judgment motions).

In the alternative, Plaintiff may have intended some or all of this evidence to be considered in support of one of his multiple motions for injunctive relief. However, any evidence intended to support one of his motions for injunctive relief should be presented with that motion. Again, Plaintiff has spread information intended to support his various motions across the docket, which in turn inhibits the Court's ability to effectively review his claims. Plaintiff should not expect the Court to sift through multiple filings to determine what is relevant to each of his requests for relief. In light of the above, the Court will not consider the allegations set forth in Plaintiff's various evidentiary submissions at this time. If Plaintiff wants the Court to consider such

evidence, he must present it at the appropriate time and in the appropriate manner. However, the Court once again takes the opportunity to remind Plaintiff that he may not file routine discovery matters for just any purposes.

### E.   Plaintiff's Objections to the Dismissal of Substantive Claims

As noted above, Plaintiff submitted four sets of Objections to the Magistrate Judge's O&R. While Plaintiff has the right to file objections to the Magistrate Judge's recommendations, he has done so in a very disruptive manner. Plaintiff has submitted four sets of Objections, which he filed over a period of two weeks. Moreover, it appears that Plaintiff intended for information in his various Affidavits, Declarations, and Notices to be considered in support of his Objections. As discussed above, this type of piecemeal filing (in violation of Local Rule 7.4) doesn't allow the Court to effectively review Plaintiff's allegations or his objections. Rather, the Court spent considerable time reviewing all filings to ensure that it carefully considered Plaintiff's Objections—a task that has severely delayed the preliminary review stage.

While the Court could order Plaintiff to file a single set of objections, it finds that such an order would only prolong resolution of these preliminary matters. Therefore, given the unique posture of this case, the Court now considers Plaintiff's Objections to the Magistrate Judge's recommended dismissal of his substantive claims.

### 1. Deliberate Indifference to Safety Claim against Commissioner Ward

In his O&R, the Magistrate Judge recommended that Plaintiff's deliberate indifference to safety claim against Commissioner Ward be dismissed because Plaintiff failed to allege facts regarding Ward's actual knowledge of the violence at Macon State prison. *See* [Doc. 11, p. 25]. In his second set of Objections, Plaintiff objects to the dismissal of Ward, asserting that Ward "has been put on notice of Plaintiff's incidents and all other acts of violence through grievances and reports from defendants and media reports." [Doc. 33, p. 1]. Plaintiff contends that, in a deposition for a separate lawsuit, Ward testified that his responsibilities include overseeing day-to-day management of the Georgia Department of Corrections, operation of its four divisions, overall supervision of operations, and administration of the facility, which includes "'oversight of security and custody of inmates housed within the GDOC, and management of prison staff.'" [*Id.* at p. 2]. Plaintiff appears to assert that these responsibilities, coupled with Plaintiff's correspondence, put Ward on notice of the facts underlying his claims. [*Id.*].

First, Plaintiff isn't specific about the type of correspondence that he sent to Ward or what Ward would have known with regard to any particular claim. And second, Plaintiff's new allegations still fail to show a subjective awareness on the part of Ward as to the particular situation or the level of violence at Macon State Prison. Thus, it does not appear that his objections warrant any change to the recommended dismissal. The

Court **ADOPTS** that portion of the O&R dismissing Plaintiff's deliberate indifference to safety claim against Ward.

> **2.    Deliberate Indifference to Safety Claims Against Unit Manager Knight, Warden Smith, Deputy Wardens Sales and Eady, Sergeant Tullis, and Officer Cross**

Next, Plaintiff objects to the Magistrate Judge's recommended dismissal of the deliberate indifference to safety claims against Unit Manager Knight, Warden Smith, Deputy Wardens Sales and Eady, Sergeant Tullis, and Officer Cross. These claims arise from Plaintiff's allegations that his health and safety were put at risk because, in a single day, two fires were set inside Plaintiff's building. When recommending dismissal, the Magistrate Judge found that Plaintiff failed to allege sufficient facts showing that these Defendants had any reason to know that the second fire would be set or that they were aware of the second fire and disregarded a danger to Plaintiff. [Doc. 11, pp. 25–27]. In his second Objection, Plaintiff argues that Defendants came on to their shift after the first fire was set so, presumably that means they would have been present during the second fire. [Doc. 33, p. 2]. Relatedly, he asserts that the "defendants had a duty regarding the first fire to follow [Georgia Department of Corrections] fire evacuation protocols, and 'aftermath' instructions in the event of a fire." [*Id.*]. Furthermore, according to Plaintiff, Georgia Department of Corrections officials hold a daily briefing to discuss prison activity. [*Id.*]. However, Plaintiff fails to allege any facts suggesting that the officials discussed either fire during this briefing. [*Id.*].

In his Complaint, Plaintiff refers to the Georgia Department of Correction's standard operating procedures. He argues that the Magistrate Judge misconstrued his references to the standard operating procedures in relation to the claims alleged. [*Id.* at p. 3]. He argues that the failure to comply with these procedures demonstrates a violation of his constitutional rights. [*Id.*]. Plaintiff asserts that "Knight is the building manager, Tullis is the supervisor, Cross is the floor officer of said building. [*Id.*]. Wardens Sales and Eady are their direct supervisors and responsible for Plaintiff's constitutional right to security and safety." [*Id.*].

To the extent that Plaintiff uses the standard operating procedures to support his claims, the Magistrate Judge in his O&R correctly explained how the failure to follow such procedures does not, on its own, show a constitutional claim. With regard to the fire, Plaintiff's allegations appear to be intended to show that Defendants worked in the building where the second fire was set. However, Plaintiff doesn't include specific allegations showing that any Defendant was aware of the second fire. And while Plaintiff asserts that Defendants should have followed "fire evacuation protocols" and "aftermath" instructions, he does not explain what they should have done differently to comply with these protocols. Insofar as Plaintiff's objections do not show that Defendants had actual knowledge of the fire and disregarded any risk of harm, it still does not appear that he has stated a claim in this regard. The Court **ADOPTS** that portion of the O&R dismissing Plaintiff's deliberate indifference to safety claims against

Unit Manager Knight, Warden Smith, Deputy Wardens Sales and Eady, Sergeant Tullis, and Officer Cross.

### 3.      Deliberate Indifference to Safety Claim Regarding Cellmate

In his Complaint, Plaintiff alleges that his cellmate Jakari Daniel is a member of the Good Fellas gang and that the Georgia Department of Corrections officials conspire with the Good Fellas to harm Plaintiff. In support of this, Plaintiff asserts that gang members threatened him on November 26, 2021, by stating that if he spoke about what happened, "he would die in the hole." Thereafter, his cellmate "who possibly was a former G.F. affiliate . . . came to segregation armed with a homemade knife." Plaintiff also asserts that Defendants did not search the cellmate to find the knife and that the cellmate was able to use drugs in the cell without punishment.

Upon review of these allegations, the Magistrate Judge recommended dismissal of the deliberate indifference to safety claim because Plaintiff failed to assert facts showing that Daniel was actually a member of the Good Fellas or that Daniel had presented any danger to him. [Doc. 11, pp. 27–28]. The Magistrate Judge found his allegations to be mere speculation. [*Id.*].

In his second Objection, Plaintiff asserts that, on the occasion when his cellmate spat on Knight (an incident discussed in the O&R), the cellmate used a phrase that is only used by the Good Fellas. [Doc. 33, p. 3]. Plaintiff also asserts that his cellmate was using drugs and pulled a knife on Plaintiff. [*Id.*]. Plaintiff told Cross and Tullis about the

incident, but they said they couldn't move the cellmate because all the other cells were

full. [*Id.*]. Tullis offered to place the cellmate in general population, but the cellmate

declined this offer. [*Id.*].

These allegations were not in Plaintiff's Complaint. His contention that he told

Cross and Tullis that his cellmate pulled a knife on him could arguably show that Cross

and Tullis were aware of a potential risk of harm to Plaintiff. On the other hand,

Plaintiff's allegations are vague insofar as he does not explain what happened during

the altercation with the cellmate. Plaintiff alleges that the cellmate produced the knife,

but it does not seem that the cellmate actually attempted to use it on Plaintiff or had

otherwise ever physically tried to harm Plaintiff. Thus, these new allegations still do not

show that Plaintiff's cellmate posed an unreasonable risk of harm to Plaintiff and that

Defendants disregarded this risk of harm for the purposes of a deliberate indifference

claim.

Then, in his fourth Objection, Plaintiff voices his objection to the dismissal once

again. [Doc. 40, p. 5]. Plaintiff asserts that Defendants knew that Plaintiff had been

assaulted by members of the Good Fellas gang on November 26, 2021. [*Id.*]. He contends

that, immediately following the attack, Defendants deliberately refused to watch

surveillance camera footage of the attack and failed to afford him medical care. [*Id.*]. He

also asserts that Defendants acted with deliberate indifference by placing him in a cell

with a mental health patient who had violent episodes. [*Id.*]. Moreover, he asserts that

Defendants failed to protect him from his cellmate's drug use and threats of violence at knife point. [*Id.*]. He argues that these allegations are not conclusory. [*Id.*].

Plaintiff notes that he has a right to be free from retaliation. [*Id.* at p. 6.]. He then states that his cellmate displayed violent conduct directed towards both staff and Plaintiff. [*Id.*]. In particular, Plaintiff refers to his cellmate spitting on Defendant Knight and lashing out at staff members. [*Id.*]. Although he still refers to potential gang affiliation, Plaintiff appears to have shifted his focus somewhat to his cellmate's status as a mental health patient. *See* [*id.*]. Although a mental health patient could potentially present a danger to his cellmate, it seems unlikely that his cellmate's mental health status alone would constitute a dangerous condition. Instead, any plaintiff asserting such a claim would need to show that his cellmate had exhibited dangerous behavior. Moreover, Plaintiff's cellmate's actions have largely been focused on staff, which seems contradictory to Plaintiff's allegations that staff were conspiring with Plaintiff's cellmate. The Court **ADOPTS** that portion of the O&R dismissing Plaintiff's deliberate indifference to safety claim against his cellmate.

### 4. Deliberate Indifference to a Serious Medical Need Claim Regarding Skin Issues

In his O&R, the Magistrate Judge recommended that Plaintiff's deliberate indifference to a serious medical need claim be dismissed as it related to the worsening of his skin conditions because Plaintiff failed to assert facts showing that any Defendant had been deliberately indifferent to the alleged sores and hives amassing on his skin.

[Doc. 11, pp. 34–35]. In particular, the Magistrate Judge found that Plaintiff didn't show that any Defendant was specifically aware of his skin issues and then ignored the risk of harm related to them. [*Id.* at p. 34].

In his second Objection, Plaintiff argues that the Court should focus on the personal hygiene issue that exacerbated his skin problems, rather than Defendants' knowledge of the skin problems themselves. [Doc. 33, p. 3]. Since this objection does not provide a basis for rejecting the recommendation, the Court stands by the Magistrate Judge's original findings and conclusions.

In his third Objection, Plaintiff again asserts that, with regard to the claim about his skin issues and Defendants' failure to provide him with a shower, the Court should focus on the conditions of his confinement rather than Defendants' actual knowledge of his skin issues. [Doc. 37, p. 2]. On this point, he contends that it would violate his privacy rights for Defendants to know about his skin issues. [*Id.*]. As noted above, the Magistrate Judge allowed Plaintiff to proceed on his conditions of confinement claim relating to the lack of showers but recommended dismissal of his deliberate indifference to a serious medical need claim in that regard. To state a claim for deliberate indifference to a serious medical need, the defendant must have known about and disregarded a risk of harm from a serious medical need. Without such knowledge, the claim can't stand. Thus, the recommendation to dismiss Plaintiff's deliberate indifference to a serious medical need claim was proper insofar as Plaintiff alleged no

facts to show any knowledge of his medical need. The Court **ADOPTS** that portion of the O&R dismissing Plaintiff's deliberate indifference to a serious medical need claim regarding his skin conditions.

### 5.   Deliberate Indifference to a Serious Medical Need Regarding Contaminated Cell

Plaintiff also objects to the recommendation that the Court dismiss Plaintiff's claims relating to being left in a contaminated cell. [Doc. 32, p. 4]. The recommendation recognized that placement in a contaminated cell could constitute a continuation of the use of excessive force, and the recommendation allowed Plaintiff's excessive force claim to proceed. Placement in a contaminated cell can also be the basis for a deliberate indifference to a serious medical need claim, but here, Plaintiff has not alleged facts showing that Defendants were aware of his breathing problems and other complications that Plaintiff asserts he suffered as a result of being put back into the contaminated cell. Therefore, it still does not appear that Plaintiff has stated a deliberate indifference to serious medical need claim in this regard.

### 6.   Deliberate Indifference to a Serious Medical Need Regarding Smoke Inhalation

Plaintiff objects to the recommendation that the Court dismiss claims against Defendants based on smoke inhalation. [Doc. 33, p. 4]. In this regard, Plaintiff's statement is somewhat unclear. He says that "all named defendants for this instance were aware as they came in during the second fire and used a fire extinguisher to put

out the fire, and saw the first fire and abandoned that duty as the Magistrate found [D]efendant Whitehead to do." [*Id.*]. It appears that Plaintiff is saying that all Defendants acted in a way that was similar to how Whitehead acted, such that, because the Magistrate Judge allowed a claim to proceed against Whitehead, that claim should also go forward as to the other Defendants. In this regard, Plaintiff does not specify the particular individuals involved, instead he generically asserts that all Defendants acted in the same way. This sort of general assertion isn't sufficient to allow Plaintiff to overcome the recommendation of dismissal on this claim.

### 7.    Conditions of Confinement Claim Regarding Covid-19 Safety Protocols

The Magistrate Judge recommended that Plaintiff's claims relating to the failure to take precautions against Covid-19 be dismissed. Plaintiff "objects to the Covid-19 precautions" and argues "that the conduct by [D]efendants subjected [him] to unreasonable risks of safety violations[.]" [*Id.*]. Plaintiff also asserts that Defendants intentionally placed a prisoner who had tested positive for Covid-19 in Plaintiff's segregation cell. [*Id.*].[2] Next, Plaintiff asserts that he has Hepatitis C, and Defendants knew about it. [*Id.* at p. 5]. He contends that "[D]efendants' intentional tacit commands were in fact intentional by obstructing all Covid-19 guidelines to cause Plaintiff to

---

[2] While Plaintiff voiced his concern about the placement of this prisoner in his cell, he did not mention it in his Complaint.

become infected in segregation by his cellmate who had Covid-19." [*Id.*]. Thus, he asserts that Defendants were deliberately indifferent to his health and safety.

On this claim, Plaintiff again makes only general arguments. He refers to Defendants generally without delineating any particular actions taken by any particular individual. As to Defendants placing the infected inmate in Plaintiff's cell, Plaintiff similarly does not say who was responsible for taking this action. Thus, this objection does not appear to provide a basis for finding that Plaintiff has stated a claim in this regard.

In his fourth Objection, Plaintiff begins by reiterating his objections to the recommendation that the Court dismiss his claim regarding the lack of Covid-19 precautions. [Doc. 40, p. 1]. Plaintiff asserts that a sanitary environment constitutes a basic human need and that Defendants can be held to be deliberately indifferent if they know about unsanitary conditions. [*Id.*]. Plaintiff goes on to say that Defendants failed to adhere to Covid-19 precautions. [*Id.* at pp. 1–2]. Additionally, Plaintiff again asserts that an unidentified Defendant placed another prisoner into Plaintiff's cell knowing that the prisoner was positive for Covid-19. [*Id.* at p. 2]. As before, Plaintiff does not provide specific information regarding which Defendants were responsible for putting the prisoner into Plaintiff's cell, nor does he specifically connect any other Defendant with this claim. [*Id.*].

Plaintiff also asserts that Defendant Dr. Cowens failed to wear a mask while assessing patients, which caused him to contract Covid-19 and be absent from work between April 15 and November 2020. [*Id.*]. Plaintiff does not explain how Cowens' failure to wear a mask or his contracting Covid violated Plaintiff's rights. *See [id.*]. Plaintiff also asserts that other defendants, guards, and prisoners have contracted Covid. [*Id.*]. Again, Plaintiff's allegations appear too broad and generic to state a claim for relief, particularly because Plaintiff does not explain what actions any particular individual took or failed to take and how those actions affected Plaintiff.

### 8.    First Amendment Claims Regarding Grievances

Plaintiff next objects to the recommendation's interpretation of his claim regarding grievances. [*Id.*]. On this claim, Plaintiff asserts that the recommendation mistakenly concluded that Williams and Boyer had each only rejected his grievances once when, in fact, they did so several times under emergency circumstances. [Doc. 33, p. 5] In his Complaint, Plaintiff identified a single instance of Williams telling Plaintiff that she would not accept "'any more of [his] stupid grievances.'" Thereafter, a different counselor accepted the grievance that she refused. Similarly, Plaintiff identified a single incident of Boyle refusing to accept two grievances because Plaintiff already had two grievances pending. Again, another counselor accepted the grievances. In his Objection, Plaintiff asserts that these two Defendants refused his grievances "several times." [*Id.*]. This allegation is not specific and, even assuming that Boyle and Williams refused to

accept grievances on more than one occasion each, Plaintiff does not identify any actual grievance that he has been unable to file. Moreover, as discussed in the recommendation, Plaintiff does not assert facts to show that this has amounted to a particular constitutional violation, such as by showing that he has suffered an actual injury for the purposes of a right of access to the courts claim.

### 9. Claims Regarding Two-Limit Grievances

Plaintiff makes a general objection to the recommendation that he has not stated a claim with regard to the two-grievance limit. [Doc. 40, p. 3.]. He asserts that the two-grievance limit "is in fact unconstitutional and a blanket policy on its face." [Doc. 33, p. 5.]. He complains that the limit allows staff members to violate his constitutional rights while he has two grievances pending because he will have to release one of his grievances in order to file a new one. [*Id.*]. This objection generally reiterates his original claim and does not show that the limit is actually unconstitutional.

### 10. Claims Regarding Dietary Concerns

Next, Plaintiff objects to the recommendation that the Court dismiss his dietary claims. [Doc. 32, p. 6]. He asserts that Defendants must provide adequately nutritious food. He further asserts that some inmates, including Plaintiff, require a 2800 or 3000 calorie diet, but that they do not receive their medically prescribed meal. [*Id.*]; [Doc. 33, p. 6]. Plaintiff contends that someone puts a notation on the trays representing that his meals satisfy the medically prescribed diet requirement, but in reality, they are not.

[Doc. 33, p. 6]. Thus, he argues that he has stated a claim for deliberate indifference based on being denied his medically prescribed meals.

Plaintiff doesn't provide any specific facts regarding the meals themselves, why he is prescribed a medical diet, or how the meals are deficient in relation to his medical needs. Moreover, he does not include specific facts tying any defendant into this claim, instead making general assertions attributing problems with the food to Defendants. To the extent that he intends this claim to lie against the John Doe defendants, he still has not provided any specific description of those defendants. And to the extent that he intends it to lie against the other named defendants, he has not provided any explanation as to their knowledge of his medical needs.

In his fourth Objection, Plaintiff brings up his dietary claims once again. [Doc. 40, p. 2]. Plaintiff asserts that "Smith, Perry, and Dozier are responsible for overseeing the functions of the prison and ensuring Plaintiff receives those meals." [*Id.*]. He contends that all Defendants failed to provide him with his dietary meals and that they provide him meals that are fraudulently marked as dietary meals. [*Id.*]. As before, Plaintiff doesn't explain what is deficient about his meals in relation to his medical needs, nor does he provide any information to show that any Defendant is somehow responsible on this claim.

Plaintiff further asserts that he has attached a medical request form directed to Dr. Cowens asking for information about medicines prescribed for hypertension and

pain, a refill on his medication, and the results of an MRI. [*Id.* at p. 3]. It is unclear how this would relate to Plaintiff's medical diet. He also says that he has attached "another falsified diet sticker" that was placed on a tray that did not comply with his dietary needs. [*Id.*]. Plaintiff asserts that he is prediabetic and has been "served improper meals upon all meals throughout the days and years while at Macon State Prison." [*Id.*]. Again, Plaintiff's allegations in this regard are generic allegations without supporting factual information necessary to show that anyone actually violated his constitutional rights. In particular, Plaintiff provides no information as to how the meals are inadequate or do not meet his medical needs. Thus, he still has not stated a claim in this regard.

### 11.    Claims Against Officer Cross

Plaintiff objects to the dismissal of his claims against Officer Cross, asserting that because the Magistrate Judge allowed the claims against Tullis, Knight, and Smith to go forward, claims against Cross should go forward as well. [Doc. 33, p. 6]. In this regard, Plaintiff asserts that "Cross was in fact directly involved with [D]efendants Tullis and Knight on a day to day basis." [*Id.*]. He also asserts that Defendants still refuse to let him shower. [*Id.*].

As discussed above, Plaintiff again only makes broad allegations that Cross was "involved with" the Defendants against whom the Magistrate Judge allowed claims to go forward. Plaintiff does not specify what involvement Cross had or how, in

particular, Cross violated his rights.[3] Thus, it does not appear that this objection

provides a basis for rejecting the recommendation.

In his third Objection, Plaintiff again objects to the recommendation that the

Court dismiss Cross as a party. [Doc. 37, p. 1]. In support of this Objection, Plaintiff

asserts that Cross "worked daily . . . alongside defendants Tullis [and] Knight" in

Plaintiff's building and that he conspired with other Defendants to violate Plaintiff's

rights. [*Id.*]. He also generally states that Cross "implemented and enforced those

unlawful, non-procedural policies" against Plaintiff and that he willfully agreed to

violate Plaintiff's rights. [*Id.*]. As discussed above, Plaintiff's allegations against Cross

are generic and conclusory, saying that Cross violated Plaintiff's rights without

providing any factual support showing what Cross did that was a constitutional

violation. Thus, this again does not provide grounds for rejecting the recommendation.

### 12.   Claims Against Warden Perry

Plaintiff also objects to the recommendation that his claims be dismissed as to

Defendant Warden Perry. [*Id.* at p. 7]. In the Complaint, Plaintiff made no allegations

against Perry in his statement of facts. In the Objection, Plaintiff adds that Perry was the

warden at Macon State Prison and was aware of violence in the prison. [*Id.*]. Plaintiff's

allegations with regard to the first time he was attacked included that the attack

---

[3] In other motions, Plaintiff does include more specific allegations as to Cross, but he doesn't do so in a pleading or this Objection.

occurred in July 2020. It appears that Warden Smith replaced Warden Perry on July 1, 2020, such that Perry was apparently no longer the warden when Plaintiff was first attacked. It seems like there is a disconnect between Perry and the allegations insofar as Perry was not the warden when any of the events in the Complaint occurred. Thus, Plaintiff has not stated a claim in this regard.

### F.    Plaintiff's "Amended Complaint"

Additionally, Plaintiff has filed a document, titled "Amended Complaint" [Doc. 51]. "As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading." *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982). Once the district court accepts the amended pleading, "'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006)). While the courts liberally construe the filings of pro se plaintiffs, the Supreme Court has stated that it "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993).

Here, Plaintiff's Amended Complaint didn't specifically refer to or adopt his original pleading. As a result, the Court could accept the Amended Complaint as the operative pleading in this case and conclude that review is now limited to it alone. *See Schreane v. Middlebrooks*, 522 F. App'x 845, 848 (11th Cir. 2013) (per curiam) (affirming a district court's dismissal of a case based on the amended complaint without addressing claims raised in the original pleading where the plaintiff did not specifically refer to or adopt the original pleading). However, as Plaintiff largely didn't set forth any claims from the original Complaint in the Amended Complaint, it seems highly unlikely that this is the result that Plaintiff intended.

It is more likely that Plaintiff intended for the Court to treat his amendment as a supplement to the original Complaint. Any such supplement requires Plaintiff to obtain leave of the Court, *see* Fed. R. Civ. P. 15(d) (providing that the Court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented"), and Plaintiff has not moved for leave to supplement his Complaint. Regardless, the Court construes his Amended Complaint as a Motion to Supplement, and **DENIES** it for the reasons set forth below.

At the outset, in his statement of facts, Plaintiff makes broad allegations of conspiracy and refers the Court to "evidence of facts for conditions of confinement and failure to protect attached hereto but submitted as a separate filing." [Doc. 51, p. 2]. The

attachments include a Letter to Commissioner Ward [Doc. 51-1] asserting that officials retaliate against him by refusing his grievances, failing to answer his grievances in a timely manner, and automatically denying his grievances without a legitimate reason. *See* [Doc. 51-1]. Plaintiff has also attached a Statement [Doc. 51-4] with allegations that Dr. Cowens failed to provide him adequate medical care, officials retaliate against him in various ways, the prison is improperly ventilated which has caused him to develop chronic microvascular ischemic white matter disease, he is not provided cleaning chemicals, the water is contaminated, and Knight and Brown used excessive force against him. [Doc. 51-4, pp. 1–5]. Some of these allegations relate to claims from the original Complaint and others appear to be new. *See* [*id.*]. Plaintiff also attached a Declaration [Doc. 51-5] asserting that a nurse refused to provide him with a "no miss" medication and that another inmate set a fire in his cell in April 2022. *See* [Doc. 51-5]. In the Amended Complaint itself, Plaintiff alleges that Defendants conspired to have him killed. [Doc. 51, p. 2]. Plaintiff refers to an incident in which another inmate, who was involved in an earlier attack on Plaintiff, tried to attack Plaintiff again. [*Id.* at pp. 2-3]. Plaintiff has discussed this incident in other filings. In the Amended Complaint, he refers to the incident but does not discuss it with particular detail. *See* [*id.*].

Plaintiff goes on to assert that on April 12, 2022, Nurse Valentine refused to give Plaintiff a "no miss" dose of his Hepatitis C medication. [*Id.* at p. 3]. Plaintiff also asserts that Lachaka McKenzie, a deputy warden of care and treatment, retaliated against him

because he exposed her for making an untrue statement in a different case. [*Id.* at pp. 3–4]. Plaintiff mentions McKenzie returning a grievance to him that he had marked as an emergency. [*Id.* at p. 3]. He asserts that McKenzie is involved in medical decisions, that she shows favoritism towards members of the Good Fellas gang, and that she conspired with Nurse Valentine regarding the missed medication. [*Id.* at pp. 3–4].

With regard to the missed medication, Plaintiff asserts that missing the dose meant that he would have to start the treatment over entirely, but he provides no specific information as to what happened when he did not receive the medication. [*Id.* at p. 4]. Plaintiff further alleges that Defendant Knight promised to starve Plaintiff and that he has done so, causing Plaintiff to lose twelve pounds since Plaintiff filed this case. *See* [Doc. 51-5]. Plaintiff does not provide specific details regarding his allegations that Knight is trying to starve Plaintiff. *See* [*id.*].

Plaintiff's allegations in his "Amended Complaint" and attachments are somewhat akin to a shotgun pleading. In particular, Plaintiff alleges various different claims with few to no supporting factual allegations explaining what has actually happened. For example, as noted herein, Plaintiff alleges that Defendant Knight is attempting to starve Plaintiff, but he provides no information regarding the manner in which Knight is allegedly doing so other than a general allegation that Knight has had his colleagues withhold food from Plaintiff "at select intervals." *See* [*id.* at p. 4]. The Court cannot evaluate this claim because Plaintiff has not provided information

regarding who Knight delegated to withhold food, how much food is being withheld, or how often Plaintiff is not receiving food. Plaintiff's general allegations that food has been withheld from him at times and that he has lost weight do not demonstrate that Knight has actually violated Plaintiff's constitutional rights.

Furthermore, Plaintiff appears to add claims that are not appropriately joined in this case. Rule 20(a)(2) of the Federal Rules of Civil Procedure permits joinder of defendants only when the right to relief asserted arises "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Here, Plaintiff includes a claim against Nurse Valentine and Deputy Warden McKenzie for refusing him medication on one occasion. Plaintiff's only allegations linking this claim to anything else in this case are his wholly conclusory allegations that these individuals acted in retaliation and conspired with other Defendants. These conclusory statements are not sufficient to show that any conspiracy occurred, and Plaintiff hasn't supported them with specific facts. Thus, the Court **DENIES** Plaintiff's construed Motion to Supplement.

The Court has considered Plaintiff's repetitive and excessive filings in detail and found many of them to include factual allegations against individuals that weren't set forth in the original Complaint. The Court stresses that it will not act as counsel for Plaintiff and pull allegations from his original Complaint, the "Amended Complaint" filing, the four sets of Objections, and other relevant filings into one single pleading on

his behalf. *See Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 276–77 (11th Cir. 2008). Nor will it not accept Plaintiff's practice of having multiple documents in a lawsuit that could be considered "pleadings." *See* Fed. R. Civ. P. 7.

To that end, the Court **GRANTS** Plaintiff limited[4] leave to file an amended complaint that complies with the Federal Rules of Civil Procedure. The newly amended complaint must not assert claims that the Court has already dismissed upon its preliminary review. However, if Plaintiff chooses to take advantage of this opportunity, he must submit an amended complaint that clearly outlines his claims against Defendants. This requires Plaintiff to list each defendant and then, under each defendant's name, list numbered responses to these specific questions.

    (1) What did this defendant do (or not do) to violate your rights?
    (2) When and where did each action occur (to the extent memory allows)?
    (3) How were you injured as a result of this defendant's actions or decisions?
    (4) What relief do you seek as to this defendant?

In other words, Plaintiff's amended complaint must "specify which defendants were responsible for each alleged act or omission and which defendants correspond to each claim." *Wells v. Royal Caribbean Int'l Cruises Ltd.*, No. 20-13378, 2021 WL 3047173, at *1 (11th Cir. July 20, 2021). Plaintiff should state his claims as simply as possible and need not use formal language or legalese, nor is he required to cite any specific statute

---

[4] Because the Court has taken considerable time to review Plaintiff's Objections to the recommended dismissal of his substantive claims, it will not simply allow Plaintiff to reassert such claims in an amended complaint.

or case law to state a claim. *See* Fed. R. Civ. P. 8. His amended complaint must not be longer than 25 pages total, and it must not include any exhibits or other attachments. If Plaintiff wants to amend his complaint beyond the amendment that the Court is allowing herein, he must file a motion for leave to amend and a proposed amended complaint.

### G.    Motions for Injunctive Relief

A temporary restraining order ("TRO") or preliminary injunction is a drastic remedy used primarily to preserve the status quo rather than to grant most or all of the substantive relief sought in the complaint. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983); *Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982).[5] Factors a movant must show to be entitled to a TRO include: "(1) a substantial likelihood of ultimate success on the merits; (2) the TRO is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the TRO would inflict on the non-movant; and (4) the TRO would serve the public interest." *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995) (per curiam).

### 1.    Pre-Recommendation Motions

Prior to entry of the O&R, Plaintiff filed four separate motions seeking injunctive relief. *See* [Doc. 4]; [Doc. 5]; [Doc. 9]; [Doc. 10]. In two motions, Plaintiff seeks medical

---

[5] The standard for obtaining a temporary restraining order is the same as the standard for obtaining a preliminary injunction. *See Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001) (per curiam); *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010) (per curiam).

care in regard to an attack against Plaintiff that occurred on November 26, 2021—an incident discussed in Plaintiff's Complaint. [Doc. 4]; [Doc. 10]. In the other two motions, Plaintiff seeks to have Defendants designate members of the Good Fellas gang as a security threat group because the gang is responsible for violence throughout Macon State Prison.[6] [Doc. 5]; [Doc. 9]. The Magistrate Judge recommended that all four motions be denied because Plaintiff had not met the criteria for a preliminary injunction or temporary restraining order. [Doc. 11, pp. 43–47].

In his first set of Objections, Plaintiff alleges many new facts regarding his health. For example, Plaintiff alleges that on March 15, 2020, Dr. Cowens found something abnormal on his MRI scan and referred him to a neurologist. [Doc. 32, p. 1]. Plaintiff also states that he filed a complaint against Dr. Cowens (who Plaintiff believes is a homosexual) for sexually harassing him by making "inappropriate comments and perverted assessments" of him. [*Id*.].

At his medical appointment, Plaintiff claims that Captain Hudson and Lieutenant Hatcher were present in the medical hallway. [*Id.* at p. 2]. Members of the Good Fellas gang were also in the vicinity for medical appointments. [*Id*.]. Hudson said to Plaintiff, "I heard you've become a troublemaker for us." [*Id*.]. Plaintiff asserts that

---

[6] This is yet another example of how Plaintiff's filings present redundant issues and clog up the docket in this case. Since the Magistrate Judge entered the Order and Recommendation, Plaintiff has filed four additional motions seeking similar relief, which are discussed below.

Hudson made that comment in reference to this case. [*Id.*]. He contends that Hudson

knew about this case because Defendants illegally read Plaintiff's mail. [*Id.*].

Additionally, Plaintiff argues injunctive relief is necessary because there is gang

violence in the prison, and a member of the CERT unit was stabbed on March 10, 2022.

[*Id.*].

Then, seemingly unrelatedly, Plaintiff takes issue with the following statement in

the Magistrate Judge's O&R: "Initially, officials filled out an incident report falsely

stating that Plaintiff had been moved to segregation for refusing housing." [*Id.*]. He

argues that he attached exhibits to his Complaint which support his allegations. [*Id.*].

Beyond this argument, Plaintiff does not explain his issue with this statement. To

provide context, the Magistrate Judge's statement refers to Plaintiff's allegation that:

> GDC officials forged plaintiff's incident initially and erroneously stated in
> documentation on the 'segregation tier-1 program appeal form' . . . that
> plaintiff left population for 'refusing housing,' when in fact Lt. Whitehead
> and Lt. John Doe who escorted plaintiff to tier-1 saw the physical condition
> plaintiff was in and bleeding.

[Doc. 1, p. 11]. The Magistrate Judge's statement merely paraphrases Plaintiff's own

allegations.

Plaintiff's objections do not point to flaws in the Magistrate Judge's reasoning.

Instead, they largely add new facts. Regardless, this Court has conducted a *de novo*

review of the motions for injunctive relief and the Magistrate Judge's recommendations.

On that review, the Court now **ADOPTS** that portion of the O&R denying Plaintiff's

first four motions for injunctive relief. Accordingly, the Court **DENIES** Plaintiff's

Emergency Motion to be Administered Medical Care [Doc. 4], his Motion for a

Preliminary Injunction [Doc. 5], Emergency Motion to Compel Defendants to

Permanently Invoke Security Threat Group Lock-Down Status [Doc. 9], and second

Motion for Medical Care [Doc. 10].

### 2.    Post-Recommendation Motions

Following entry of the O&R, Plaintiff filed an Amended Motion for Preliminary

Injunction [Doc. 31], a Motion for Temporary Restraining Order and/or Preliminary

Injunction [Doc. 36], a Motion for Protective Order [Doc. 48], a Motion for Defendants to

Cease Retaliation [Doc. 50], and a Motion to Renew Prior Motions [Doc. 52]. As

discussed above, Plaintiff's repeated motions seeking the same or similar relief are

improper, and they inhibit the Court's review of this case. Although these motions are

addressed herein, the Court cautions Plaintiff that it may impose sanctions if he

continues to improperly submit repetitive and excessive filings.

### a.    *Amended Motion for Preliminary Injunction*

In Plaintiff's Amended Motion for a Preliminary Injunction, he asserts that

Commissioner Ward, Warden Smith, and Deputy Warden of Security Sales are

responsible for Plaintiff's safety, as well as the safety of all prisoners in Macon State

Prison. [Doc. 31, p. 1]. In particular, Plaintiff alleges that Ward has the authority to

invoke a security threat group lockdown. [*Id.*]. Apparently, on March 7, 2022, Smith,

Sales, and Cross issued "tacit commands to disciplinary investigator staff member COII Davis," who came to Plaintiff's building and walked around with "Plaintiff's assailant" investigating prisoners who had received disciplinary reports. [*Id.*].

Plaintiff alleges that "rogue prison officials and defendants" retaliate against him because they know who attacked Plaintiff and continue to expose him to the attacker. [*Id.* at pp. 1–2]. Additionally, these "rogue staff members and defendants" conspire with and take bribes from the Good Fellas gang members. [*Id.* at p. 2]. Defendants also expose Plaintiff to harm from other inmates who carry knives. [*Id.*]. Moreover, Cross and other staff members also carry knives. [*Id.*].  Plaintiff notes that, on February 25, 2022, an "Islamic extremist and blood gang carried out a mini riot" in part of the prison. [*Id.*].

Based on allegations of a high-level of violence at the prison, Plaintiff moves for a preliminary injunction. [*Id.*]. He asserts that prisoners' medical records and the number of hospitalizations show the high-level of violence. [*Id.* at p. 3]. He contends that Defendants cannot ensure his safety and the Court should require Commissioner Ward to place Plaintiff's assailants, the Good Fellas gang members, and all other security threat groups on a permanent lockdown. [*Id.* at pp. 3–4]. He also asserts that Smith and Sales use their positions to promote other corrupt officials. [*Id.* at p. 4].

In support, Plaintiff cites to cases that generally do not involve preliminary injunctive relief. Some of the cases address whether a plaintiff has stated a claim or

whether a party was entitled to summary judgment. *See, e.g.*, [Doc. 31, p. 3 (citing *Marsh v. Butler Cnty.*, 268 F.3d 1014 (11th Cir. 2001)]. And, those cases that do involve injunctive relief relate to injunctions as part of a judgment based on extensive evidence presented to the court, as opposed to preliminary injunctions. *See [id.* (citing *LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993); *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974))]. At this stage, Plaintiff's evidence consists largely of his own affidavits and declarations. It is not clear from the evidence that Plaintiff has a substantial likelihood of prevailing on the merits of his claims.

Plaintiff's allegations regarding the extent of the alleged violence and his exposure to inmates who previously attacked him are somewhat troubling. However, it is not clear whether preliminary injunctive relief is necessary to prevent irreparable harm to Plaintiff. In this regard, Plaintiff doesn't identify any events where he has suffered injury since an attack in November 2021. At most, Plaintiff alleges that one of his attackers approached him with an intent to cause harm, but the guards intervened and prevented the would-be attacker from harming him.

Moreover, the Court affords prison administrators, "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). For the Court to order Defendants to classify prisoners in certain ways or to impose particular restrictions on prisoners at this stage of the

proceeding would be completely at odds with this deference. In this regard, Plaintiff

has not shown that the threatened injury to him outweighs the potential harm or that

injunctive relief would serve the public interest. Accordingly, the Court **DENIES**

Plaintiff's Amended Motion for a Preliminary Injunction [Doc. 31].

### b.    *Motion for Temporary Restraining Order*

Plaintiff filed a second post-recommendation Motion for Temporary Restraining

Order or Preliminary Injunction. *See* [Doc. 36]. Once again, Plaintiff contends that he is

in imminent danger due to the high rate of inmate-on-inmate killings in Macon State

Prison, which occur in both general population and segregated housing units. [*Id.* at pp.

1–2]. In support of this contention, Plaintiff states that Smith, Sales, and Cross removed

him from his assigned building for an attorney phone call, and they exposed him to one

of his assailants from the attack in November 2022. [*Id.* at p. 1]. Apparently, Plaintiff's

former assailant, Corey Miller, was on work detail in the building where the guards

took him for the phone call. [*Id.* at p. 2]. Plaintiff asserts that he "confronted Miller," and

Miller produced a homemade knife [*Id.*]. Plaintiff then went outside to where Cross was

located. [*Id.*]. Cross gave Plaintiff the telephone and walked back to the staff office with

Plaintiff. [*Id.*]. After Cross left the building, Miller and two other inmates came into the

room where Plaintiff was speaking to his attorneys. [*Id.*]. At that point, Plaintiff told his

lawyers what was happening, and a guard ran into the building and escorted the three

men away from Plaintiff. [*Id.* at p. 3].

Plaintiff filed an emergency grievance about the incident. [*Id.*]. Plaintiff reiterates that the rampant violence at Macon State Prison puts him at risk of harm and injunctive relief is necessary to prevent Defendants from being deliberately indifferent to the violence or from retaliating against him. [*Id.*]. In support, he notes that the prison is understaffed, and inmates have knives and other weapons available to them. [*Id.*]. He alleges that Defendants know the identities of his assailants because the incidents occurred on surveillance cameras and he has filed grievances about them. [*Id.* at p. 4].

Based on these allegations, Plaintiff asserts that Defendants violated his Eighth Amendment rights, which amounts to irreparable harm. [*Id.*]. He also argues that the potential harm to him outweighs any potential harm to Defendants from injunctive relief, he is likely to succeed on the merits because Defendants serve him improper food and retaliate against him, and the relief sought will serve the public interest because "[i]t is always in the public interest for prison officials to obey the law." [*Id.* at pp. 4–6.] Plaintiff asserts that, in the absence of an order, Defendants will continue to subject him to retaliation and harm. [*Id.* at p. 7].

This second Motion is substantially similar to the one filed before it. Once again, it is not clear at this early stage of the proceeding whether Plaintiff has a substantial likelihood of prevailing on the merits. Moreover, while it is concerning that Cross apparently left Plaintiff alone and exposed to his former assailant, Plaintiff also asserts that a guard promptly rushed in and escorted the potential assailants away. Therefore,

the allegations thus far don't show that a drastic remedy such as injunctive relief is necessary to prevent harm. And, once again, Plaintiff is asking the Court to interfere with decisions by prison officials without having the benefit of the full evidence in this case, which suggests that a preliminary injunction would not be in the public interest. In light of the above, this second post-Recommendation Motion for Temporary Restraining Order or Preliminary Injunction [Doc. 36] is also **DENIED**.

c.     *Motion for Protective Order*

In Plaintiff's Motion for Protective Order, he once again asserts that that he is in imminent danger from retaliatory conduct by Defendants. *See generally* [Doc. 48]. The subject of the Motion focuses on Plaintiff's allegation that Smith, Sales, Knight, Cross, and Ward are aware that Corey Miller attacked Plaintiff in November 2021, and that Miller was involved in the February 24, 2022, incident. [*Id.* at p. 1]. Plaintiff asserts that Defendants nonetheless allow Miller to be in Plaintiff's direct presence. [*Id.*]. For example, Plaintiff asserts that Miller works in the building where Plaintiff is now assigned. [*Id.* at p. 2].

On April 13, 2022, Defendants took Plaintiff into an unsecured room for another attorney phone call. [*Id.*]. Plaintiff alleges that his life was in danger because he was handcuffed in Miller's presence. [*Id.*]. Defendants also allow Miller to taunt and threaten Plaintiff, as well as to dispense Plaintiff's food. [*Id.*].

41

Plaintiff asserts that Defendants responsible for security intentionally retaliate against him. [*Id.* at p. 3]. Cross and Knight verbally antagonize Plaintiff. [*Id.*]. Other Defendants deny him legal supplies. [*Id.*]. Knight and Cross allow Miller "to do what he wants (i.e., breaking . . . rules and policies)" while denying Plaintiff access to the prison telephone. [*Id.*]. They also allow Miller to "assist in picking up outgoing mail in order to impede [his] legal mail." [*Id.*]. Plaintiff seeks an order requiring Ward, Smith, and Sales to protect Plaintiff from Miller. [*Id.*].

Considering Plaintiff's various other filings for injunctive relief, the Court concludes that this Motion is largely redundant and differs only in that it is more focused on Plaintiff's interactions with Miller. As with the other filings, it is not yet clear whether Plaintiff has a likelihood of success on the merits and Plaintiff has not shown that injunctive relief is necessary to prevent irreparable harm, outweighs the potential harm to Defendants, or would be in the public interest. Therefore, this Motion [Doc. 48] is also **DENIED**.

> d.    *Motion for Defendants to Cease Retaliation*

Plaintiff moves the Court to order Defendants to stop retaliating against him. [Doc. 50]. He claims that he has already presented evidence of Defendants' retaliatory actions by denying him legal supplies. [*Id.* at p. 1]. However, in this filing, he alleges additional retaliatory actions. For example, Plaintiff contends that on April 4, 2022, Smith, Sales, and "their agents" moved Plaintiff from his previous building to a new

building. [*Id.*]. Plaintiff notes that his assailants from the November 2022 attack have never been punished and that Corey Miller works in the building where Plaintiff has been transferred. [*Id.*]. Plaintiff asserts that this situation subjects him to "further physical harm." [*Id.*]. Moreover, Miller and other prisoners pick up Plaintiff's outgoing legal mail and pass out meals unsupervised. [*Id.*].

Plaintiff alleges that Miller previously threatened to kill Plaintiff but the "defendants continue to allow Miller to gain access through secured areas of the prison." [*Id.*]. Defendants also deny Plaintiff three weekly showers, instead allowing him no more than one shower per week. [*Id.*]. Plaintiff contends that Defendants let Miller "tamper with Plaintiff's meals," noting that Knight is acting on a threat to starve Plaintiff. [*Id.*]. On this point, Plaintiff asserts that he receives trays with missing food, "unsanitary objects, bodily fluids, and other harmful objects" placed on them. [*Id.*]. Plaintiff asserts that inmates place these items on his tray in "blind spots off the [building's] cameras" on "tacit commands from defendants." [*Id.*]. Plaintiff does not identify any particular incident in this regard, but instead, makes only general allegations. *See* [*id.*].

Plaintiff asserts that he has the right to shower, be free from mail impediments, and have access to legal supplies and a law library. [*Id.* at p. 2]. According to Plaintiff, "[p]rison staff manipulate law library records to deny" him research materials, inhibiting his ability to research this case. [*Id.*]. He also says that, since Smith and Sales

43

moved him to his new building, he is "in the direct presence of defendants Knight, Cross, and Brown," who oversee the building. [*Id.*]. Plaintiff believes that Ms. Brown, who works in the law library, may be related to Defendant Brown. [*Id.*].

Plaintiff contends that, in December 2021, Cross allowed another inmate's cellmate to steal all of that inmate's property and then refused to allow the inmate back into the cell. [*Id.*]. It appears from Plaintiff's allegations that the staff may have then moved the inmate to Plaintiff's cell, but this is not entirely clear. *See* [*id.*]. Regardless, Plaintiff further alleges that staff also took the inmate off of his mental health medications, which could cause him to become violent toward staff or Plaintiff. [*Id.*].

Plaintiff asks the Court to order Defendants to stop retaliating against him. [*Id.* at p. 3]. Plaintiff's allegations that any particular action are taken in retaliation are somewhat speculative, as Plaintiff does not set forth facts showing that any actions by Defendants are actually related to Plaintiff having filed grievances or lawsuits. Regardless, it is not clear at this time whether Plaintiff will ultimately be successful in this action. Moreover, Plaintiff's allegations again do not show that an order for Defendants to "cease retaliation" is necessary to prevent harm, would outweigh any potential harm, and would be in the public interest. At this stage of the proceeding, the Court will not exercise the drastic remedy of imposing injunctive relief, and thus, this Motion [Doc. 50] is also **DENIED**.

44

e.     *Motion to Renew Prior Motions*

Plaintiff moves to renew his first pre-Recommendation Motion for Preliminary Injunction and his Motion to Compel Defendants to Complete & Return the *Informa Pauperis* Documents "after the magistrate [judge] denied [them]." [Doc. 52, p. 1]. He states that he "has submitted additional evidence to the Court on the issues raised in those two motions[]" and seeks this Court's review. [*Id.*].

To start, the Magistrate Judge did not deny either of the motions at issue. In fact, both motions are pending before this Court. In his O&R, the Magistrate Judge *recommended* that the motions be denied, but he did not issue a definitive ruling on them. This Court is the one that ultimately decides whether to adopt the Magistrate Judge's recommendations.

In light of the fact that Plaintiff objected to the recommended denials, the Court conducted a *de novo* review of those motions. Its review is very clearly set forth above. Therefore, to the extent that Plaintiff sought review of those motions before their denial, it appears he got such a review. Accordingly, in light of the rulings set forth in this Order on Plaintiff's pre-Recommendation Motion for Preliminary Injunction and his Motion to Compel Defendants to Complete & Return the *Informa Pauperis* Documents, the Court **DENIES** Plaintiff's Motion to Renew Prior Motions [Doc. 51] as **moot**.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion for Proceedings to Go Directly Before the District Judge [Doc. 8] and his Motions to Appoint Counsel [Doc. 38]; [Doc. 41]. The Court also **DENIES IN PART** Plaintiff's Motion for a Subpoena Duces Tecum [Doc. 49] to the extent that it asks the Court to subpoena certain evidence but **GRANTS IN PART** the Motion to the extent that it seeks blank subpoena forms. To that end, the **CLERK** is **DIRECTED** to forward Plaintiff five signed but otherwise blank subpoena forms pursuant to Fed. R. Civ. P. 45(a)(3).

Next, with regard to the various pieces of evidence that Plaintiff has filed, the Court cautions Plaintiff not to file discovery-related evidence directly on the docket and notes that it is not considering the various affidavits, declarations, and other evidence submitted to date. Any discovery-related evidence that Plaintiff wants the Court to consider must be submitted at the appropriate time and in the appropriate manner.

Turning to Plaintiff's four sets of Objections to the Magistrate Judge's recommendations, the Court overrules each one. Accordingly, the Court **ADOPTS** the conclusions set forth in the O&R and **DISMISSES without prejudice** Plaintiff's deliberate indifference to safety claim against Commissioner Ward; his deliberate indifference to safety claims against Unit Manager Knight, Warden Smith, Deputy Wardens Sales and Eady, Sergeant Tullis, and Officer Cross; his deliberate indifference to safety claim against his cellmate; his deliberate indifference to a serious medical need claim regarding skin issues; his deliberate indifference to a serious medical need claim

regarding a contaminated cell; his deliberate indifference to a serious medical need

claim regarding smoke inhalation; his conditions of confinement claims regarding the

failure to comply with Covid-19 safety protocols; his claims against Counselor Williams

and Boyle based on their refusal to accept grievances; his claim against Commissioner

Ward based on the two-grievance limit; his claims against Warden Smith based on the

failure to stock legal pads and timely announce mail; his diet-related claims; and all

claims against Officer Cross and Clinton Perry.

As to Plaintiff's "Amended Complaint", the Court construes it as a motion to

supplement and **DENIES** the Motion. However, if Plaintiff wants to amend his

complaint to add factual allegations, Plaintiff is **GRANTED** limited leave to amend his

complaint consistent with the instructions set forth above. Plaintiff shall have **14 DAYS**

from the date of this Order to file an amended complaint.

Finally, the Court **ADOPTS** that portion of the O&R denying Plaintiff's motions

seeking injunctive relief and therefore **DENIES** Plaintiff's Emergency Motion to be

Administered Medical Care [Doc. 4], Motion for Preliminary Injunction [Doc. 5],

Emergency Motion to Compel Defendants to Permanently Invoke Security Threat

Group Lock-Down Status [Doc. 9], and his second Motion for Medical Care [Doc. 10].

Likewise, the Court **DENIES** Plaintiff's newly filed motions seeking such relief, i.e., his

Amended Motion for Preliminary Injunction [Doc. 31], Motion for Temporary

Restraining Order [Doc. 36], Motion for Protective Order [Doc. 48]; and Motion for

Defendants to Cease Retaliation [Doc. 50]. And finally, the Court **DENIES**

Plaintiff's Motion to Renew Prior Motions [Doc. 52] as **moot**.

      **SO ORDERED**, this 10th day of May, 2022.

S/ Tilman E. Self, III             
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
